RETIREMENT BOARD OF the EMPLOYEES' RETIREMENT SYSTEM OF the CITY OF PROVIDENCE et al.

v.

CITY COUNCIL OF the CITY OF PROVIDENCE et al.

John ARENA et al.

v.

Robert CLARKIN et al.

No. 93–336–A.

Supreme Court of Rhode Island.

July 10, 1995.

Richard A. Skolnik, Skolnik, McIntyre & Tate Ltd., Charles D. Mills, Rodio & Ursillo, Ltd., Providence, for plaintiffs.

Richard G. Riendeau, Asst. City Sol., Charles R. Mansolillo, Providence City Sol., Providence, for defendant.

## OPINION

LEDERBERG, Justice.

These consolidated cases came before the Supreme Court on the appeal of the defendants[1] from a judgment of the Superior Court that enjoined them from implementing an amendment to the Code of Ordinances of the City of Providence. It is the conclusion of this court that the authority of the Providence Retirement Board of the Employees' Retirement System to invest pension funds was derived pursuant to a valid ordinance. We further conclude that the amendment that transferred the investment authority to the Board of Investment Commissioners was a permissible exercise of the legislative authority of the Providence City Council. Therefore, we sustain the appeal.

### Procedural History

This case arose following the enactment by the City Council of the City of Providence of

an ordinance that transferred the authority to invest the pension funds of the city of Providence's Employees' Retirement System from its retirement board to the Board of Investment Commissioners. The transfer of authority occurred on April 9, 1993, when the city council approved chapter 1993-12 (the amendment), an ordinance that amended §§ 17–181 and 17–184 of the Code of Ordinances of the City of Providence.

On April 5, 1993, the Retirement Board of the Employees' Retirement System of the City of Providence (retirement board), by and through its members, filed civil action No. 93–1654 against defendants in the Superior Court of Providence County. The retirement board sought a declaratory judgment as well as injunctive relief, claiming that the amendment was in reality an attempt to amend the city's Home Rule Charter and thus required a citywide referendum. The complaint requested that the Superior Court declare the amendment illegal, of no force and effect, and null and void. The retirement board also requested an injunction or a temporary restraining order to suspend the utilization or application, or both, of the amendment. The objective of these requests was to ensure that the authority to manage and invest all moneys not immediately required for the payment of retirement allowances or other benefits remained with the retirement board, which had such authority prior to the passage of the amendment. Section 17–184 of the Code of Ordinances of the City of Providence.

On April 6, one day after the retirement board filed suit, seven members of the Employees' Retirement System of the City of Providence (retirement system), individually and as members of the retirement system, filed civil action No. 93–1703 in the Superior Court against defendants. These individual plaintiffs alleged that they would be aggrieved by the placement of the assets of the

1. The defendants in case No. 93– are the City Council of the City of Providence, by and through its members, the Board of Investment Commissioners in their representative capacities, and the city of Providence, by and through its treasurer, Stephen T. Napolitano, and as a municipal corporation. The defendants in case No. 93– are the members of the Providence City Council, individually and in their capacities as members of the Providence City Council, Stephen T. Napolitano, in his official capacity as treasurer of the city of Providence, and the Board of Investment Commissioners. We shall refer to the defendants in both cases collectively as either "defendants" or "the city."

retirement system under the control of the Board of Investment Commissioners because the assets and security of the pension benefits would suffer "great uncertainty and risk." The complaint averred that the Home Rule Charter of the City of Providence vested the authority for the administration and operation of the retirement system in the retirement board. This suit also sought injunctive and declaratory relief.

On April 13, 1993, the two cases were consolidated by order of the Superior Court. On May 13, 1993, the matter was heard before a Superior Court justice, whose decision held that changes in the investment power of the retirement board required a special election by the voters of the city. On May 17, 1993, the Superior Court issued a judgment that declared the amendment illegal, of no force and effect, and null and void. The judgment returned the investment authority to the retirement board and enjoined defendants from using and/or applying the amendment.

Following the entry of the judgment, the city moved to reopen, vacate judgment, and reinstitute stay, citing the failure on the part of the individual plaintiffs and the retirement board to serve the Attorney General as required by G.L. 1956 (1985 Reenactment) § 9–30–11 whenever a party challenges a statute or an ordinance as unconstitutional. The motions were denied, and this appeal ensued.

## Standard of Review

■■■■ An order of the Superior Court will be reversed on appeal when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong. *Forte Brothers, Inc. v. Ronald M. Ash & Associates, Inc.*, 612 A.2d 717, 721 (R.I.1992). Specifically, when reviewing the issuance of a permanent injunction, this court will overturn the Superior Court's findings of fact only when they are clearly wrong or when the trial justice overlooked or misconceived material evidence. *Reback v. Rhode Island Board of Regents*, 560 A.2d 357, 359 (R.I.1989).

## History of Investment Authority of Retirement System

The fundamental issue in this case is whether the city council has the power to transfer from the retirement board to the Board of Investment Commissioners the authority to invest the funds of the retirement system. In answering this question, we must review this authority by tracing the legislative history of the Employees' Retirement System of the City of Providence.

The retirement system was established by the General Assembly's enactment of P.L. 1923, ch. 489 (the retirement act). This statute, entitled "An Act to Provide for the Retirement of Employees of the City of Providence," set forth a "comprehensive system of contributions, benefits, and regulations relating to pensions to be paid to firefighters, police officers, and civilian employees of the city." *Betz v. Paolino*, 605 A.2d 837, 838 (R.I.1992).[2] Most importantly, the retire-

---

2. The pertinent sections of the retirement act, P.L.1923, ch. 489 are as follows:
 "Section 1. Definitions. * * *
 "Sec. 2. Name and Date of Establishment. A retirement system is hereby established and placed under the management of the retirement board for the purpose of providing retirement allowances for employees of the city of Providence under the provisions of this act. The retirement system so created shall begin operation as of the fifth day of January, 1925. It shall have the powers and privileges of a corporation, and shall be known as the 'Employees' Retirement System of the City of Providence,' and by such name all of its business shall be transacted, all of its funds invested and all of its cash and securities and other property held.

 "Sec. 3. Retirement Board. (1) The general administration and the responsibility for the proper operation of the retirement system and for making effective the provisions of this act are hereby vested in a retirement board. The retirement board shall from time to time establish rules and regulations for the administration and transaction of the business of the retirement system, and shall perform such other functions as are required for the execution of this act.

 (2) The membership of the retirement board shall consist of the mayor, the chairman of the joint standing committee on finance of the city council, and the city auditor, *ex officio*, and two members, who shall not be officers or

ment act created the retirement board and granted to it the power to invest all moneys not immediately required for the payment of allowances or benefits. P.L. 1923, ch. 489, §§ 3 and 4.

In 1940 the General Assembly enacted a new legislative charter for the city (P.L.1940, ch. 832 [3]). Under the 1940 charter, the then-serving members of the retirement board were continued in office until the expiration of their terms. The 1940 charter further directed that "the retirement board shall have and exercise all powers and duties now vested in said board" under the retirement act. P.L.1940, ch. 832, § 132. Under the Home Rule Charter adopted by Providence voters forty years later, in 1980, the retirement board was designated a board of the city in § 908 of the charter. In May 1981, the General Assembly "ratified, confirmed, validated and enacted" the Home Rule Charter, in particular in respect to § 908 (Retirement board) and § 1404 (Inconsistent acts and ordinances). P.L.1981, ch. 37, § 1. The Charter, briefly and succinctly delineates the duties of the retirement board:

"908. Retirement board.

(a) *Election and term.*

* * *

(b) [Powers and duties.] The powers and duties of the retirement board shall be, without limitation, the following:

(1) To establish rules and regulations for and be responsible for the administration and operation of the city employee

retirement systems under its jurisdiction;

(2) To report annually in detail to the city council on or before the first Monday in January, showing the fiscal transactions of the system for the fiscal period of the city next preceding, the amount of the accumulated cash and securities of the system and a copy of the last balance sheet showing the financial condition of the system by means of an annual actuarial valuation of the assets and liabilities."

Section 1404 of the Home Rule Charter specifically provides that the charter "shall be deemed to have superseded all other acts * * * applicable to the City of Providence which are inconsistent with this Charter."

In 1991, eight years after the effective date of the Home Rule Charter, the city council approved ordinance 1991, chapter 91–5 that codified the Providence Employees' Retirement System as §§ 17–181 through 17–197 of the Code of Ordinances. The 1991 codification essentially enacted the provisions of the 1923 retirement act into an ordinance of the city. Then, in 1993, the city council enacted the ordinance that led to this controversy. Specifically, ordinance 1993, chapter 93–12, amended § 17–184 of the Code of Ordinances to transfer authority for investment of retirement funds from the retirement board to the Board of Investment Commissioners.

It is clear that the charter itself does not grant responsibility for the investment of funds to the retirement board but that such

employees of the city, who shall be elected by the city council in joint convention.

* * *

(4) The city solicitor shall be the legal advisor of the board. The city treasurer shall be the custodian of the funds and the treasurer thereof. The city clerk shall be the clerk of the board.

(5) The city auditor, under the supervision of the retirement board, shall be charged with the establishment and maintenance of such accounts and statistical records as the retirement board may require * * *.

"Sec. 4. Investment of Funds. (1) All moneys not immediately required for the payment of retirement allowances or other benefits shall be invested by the retirement board for the benefit of the retirement system in any securities or investments in which the sinking funds

of the city of Providence may be legally invested, or in such other investments or securities as the city council may from time to time authorize, and said board shall have full power to hold, purchase, sell, assign, transfer or dispose of any of the securities or investments in which any of the funds shall have been invested as well as the proceeds of such investments and of any money belonging to said funds."

**3.** Public Laws (1940), ch. 832 provides

"An act to revise, consolidate and amend chapter 598 of the Public Laws of 1866 entitled 'An act to revise[,] consolidate and amend the act entitled "An act to incorporate the City of Providence," and the several acts in addition thereto and in amendment thereof,' and the several act[s] in addition thereto and in amendment thereof."

authority was provided through ordinance 1991, chapter 91–5, that enacted the provisions of the 1923 act. The trial justice, however, ruled that the subsequent amendment of § 17–184, by ordinance 1993 chapter 93–12 that transferred the authority to invest pension funds to the Board of Investment Commissioners, was illegal and that any such changes in the authority of the retirement board can be effectuated only by a special election to amend the Home Rule Charter in the city of Providence. The justice further found that the retirement board continued to have authority to invest funds pursuant to the Home Rule Charter.

The defendants appealed pursuant to G.L. 1956 (1985 Reenactment) § 9–24–1 and raised six issues on appeal: (1) that this matter was nonjusticiable, (2) that the city council has the authority to amend the retirement ordinance, (3) that the charter does not address the decision-making authority over investments of retirement funds, (4) that the authority to make investment decisions is not inherent in the authority to administer a retirement system, (5) that the Board of Investment Commissioners has authority to invest retirement funds, and (6) that the retirement board retains no authority to make investment decisions under the amendment.

## Standing of Plaintiffs

The defendants first contended that this matter was nonjusticiable because the retirement board lacked the capacity to sue and that the individual plaintiffs lacked standing. The defendants also argued that the procedural defect by both the retirement board and the individual plaintiffs in failing to notify the Attorney General as required by § 9–30–11 warranted a dismissal of these suits.

■ Although defendants did present substantial issues anent the capacity and standing of the parties to sue, we have, on rare occasions, "overlooked the standing require-ment to determine the merits of a case involving substantial public interest." *Burns v. Sundlun,* 617 A.2d 114, 116 (R.I.1992). Because these consolidated cases address issues of substantial importance to the members of the retirement system and, indeed, to all the taxpayers of the city of Providence, we overlook claims concerning the retirement board's lack of capacity as well as the individual plaintiffs' lack of standing.

■ In respect to the city's claim that § 9–30–11 required that the Attorney General be notified of the proceedings, we concur that this step should have been taken. In the instant case, after the trial justice had rendered his judgment, the city moved to vacate judgment, to reinstitute stay, and to extend the time for appeal. In support of these motions, defendants argued that because the trial justice had found that the city did not have the authority to change the investment power of the retirement board absent an amendment to the charter, this action, in effect, meant that the trial justice had ruled that an amendment via an ordinance was an unconstitutional attempt to amend the charter in violation of R.I. Const. art. 13, sec. 8.[4] The trial justice denied all the motions except the motion to extend time for appeal, in part because, he stated, that although the amendment was "in violation of the constitutional requirement," it was "not unconstitutional."

■ Although the requirements of § 9–30–11 should have been carried out in these cases, we decline to dismiss the appeal on this ground. As with the issues of standing and capacity, we are of the opinion that because the issues raised by this appeal are significant, the merits should be reached by this court. *See Burns,* 617 A.2d at 116.

## Authority to Invest Funds

We now address the primary substantive issue: does the city council have the power to

4. Article 13, section 8 of the Rhode Island Constitution provides:
 "Amendments to charters.—The legislative body of any city or town may propose amendments to a charter which amendments shall be submitted for approval in the same manner as provided in this article for the adoption of a charter except that the same may be submitted at a special election, and provided further that in the case of a town, amendments concerning a proposition to impose a tax or for the expenditure of money, shall be submitted at a special or regular financial town meeting."

determine which department can invest pension funds? First, we must determine the derivation of the legal authority to invest and whether this authority is subject to control by the city council.

A key component of this inquiry involves § 1404 of the Home Rule Charter of the City of Providence. This provision states in its entirety:

> "1404 Inconsistent acts and ordinances.
>
> Upon the taking of effect of this Charter and the validation of this section by the General Assembly, this Charter shall be deemed to have superseded Chapter 832 of the Public Laws of 1940 and all acts in amendment thereto which are inconsistent with this Charter and shall be deemed to have superseded all other acts and parts of acts applicable to the City of Providence which are inconsistent with this Charter. Upon the taking of effect of this Charter, all ordinances and resolutions inconsistent therewith shall be deemed to have been repealed, and all ordinances and resolutions which are consistent therewith shall remain in effect until amended or repealed by the city council in conformity with the terms of this Charter."

According to § 1404, therefore, if § 908 of the charter, which describes the retirement board, is inconsistent with the retirement act, then the retirement act is superseded by the provisions of § 908.

▉ The individual plaintiffs claimed that the authority of the retirement board to invest funds derived from a provision of the retirement act, P.L. 1923, ch. 489, § 4, entitled "Investment of Funds." These plaintiffs asserted further that the charter did not contain language that conflicted with the retirement act and that, therefore, the retirement act remained valid law. The city council, consequently, they argued, did not have the authority to amend existing state law, and therefore, the retirement board retained the authority to invest the retirement funds despite the city council's attempts to transfer this authority. We disagree.

The retirement act, P.L. 1923, ch. 489, established a retirement system for the employees of the city of Providence and placed it under the management of the retirement board. Specifically, sec. 2 of the retirement act prescribed that the retirement system would have "the powers and privileges of a corporation." In addition, this independent corporate entity was placed under the supervision of the state department of insurance, P.L. 1923, ch. 489, § 13 (although state supervision was removed by P.L. 1959, ch. 54, § 9).

As discussed *supra,* the 1940 legislative charter[5] of Providence, continued in office the members of the retirement board appointed under the 1923 act until the expiration of their terms. Under the 1940 act, the retirement board retained all powers and duties that had been vested in the board "and all such powers and duties as may be hereafter vested in said board by law, resolution or ordinance." P.L.1940, ch. 832, ch. XXII, Sec. 132. On the first Monday in January 1983, the effective date of the Home Rule Charter, the retirement board became a city board under § 908 of that charter. *See Fiore v. Lynch,* 637 A.2d 1052, 1054 (R.I.

---

5. Public Laws 1940, ch. 832, ch. XXII, sec. 131 provides:

> "*Retirement Board.* There shall be a retirement board. The members of said board shall consist of the mayor, the chairman of the committee on finance of the council, and the city auditor, *ex officio,* and two members who shall not be officers or employees of the city who shall be elected by the council. The elective members of the retirement board presently in office shall continue in office until the expiration of their respective terms. On the first Monday in January, 1941, or as soon thereafter as may be, and biennially thereafter on the first Monday in January, or as soon thereafter as may be, the council shall elect one member of said board to succeed the elective member whose term will next expire, and to hold office for a term of four years. The *ex officio* members shall receive no further compensation for services on said board, and the other members of said board shall receive no compensation for services thereon."

Section 132 provides:

> "*Powers and Duties.* Subject to the other provisions of this charter, and except as otherwise therein provided, the retirement board shall have and exercise all powers and duties now vested in said board and all such powers and duties as may be hereafter vested in said board by law, resolution or ordinance."

1994)(per curiam). The retirement board's status as an independent corporate entity did not survive its incorporation into the charter. *See* charter § 1404 Rather, the retirement board became, like all city departments, boards, and commissions, subject to the legislative power of the city council delineated in charter § 401 because the retirement board's authority is now derived from the Home Rule Charter, not the retirement act. *See Betz,* 605 A.2d at 839.

Moreover, the General Assembly "ratified, confirmed, validated and enacted" the Home Rule Charter of the City of Providence through P.L. 1981, ch. 37, § 1, which specifically ratified the section establishing the retirement board: "[T]he provisions of the home rule charter including, but not limited to sections 201, 204, 208, 209, 707, *908,* 1210 and 1404 so adopted are hereby ratified, confirmed, validated and enacted." (Emphasis added.) This statement makes clear that the General Assembly specifically ratified the fundamentally changed retirement system as represented by the retirement board under § 908. Subsequently, the city council in 1991 enacted §§ 17–181 to 17–197 of the Code of Ordinances (*see supra* ) followed by the 1993 amendments to § 17–184 that transferred the authority to invest from the retirement board to the Board of Investment Commissioners.

Thus, it is our conclusion that the retirement act is inconsistent with the Home Rule Charter and has been superseded by § 908 of that charter. The retirement board currently derives its powers and duties from § 908 of the Home Rule Charter alone. Our inquiry now must focus on whether this provision grants to the retirement board the authority to invest pension funds. If the charter provision contains such a grant, the city council's enactment of the amendment violated the provisions of the Home Rule Charter.

■ In its argument before this court, the retirement board asserted that the source of its authority to invest retirement funds was the Home Rule Charter. The retirement board stressed that because its power derived from the Home Rule Charter, any attempts to transfer or to limit this power would require voter approval through a referendum. As evidence that the charter "clearly and unambiguously provided the retirement board with the power to invest pension fund accounts," the retirement board cited our decision in *Betz.* In that case this court stated

"No question exists concerning the power of the [retirement] board to administer, to operate, *to invest funds,* and to exercise the quasi-judicial function of determining eligibility." (Emphasis added.) *Betz,* 605 A.2d at 839.

It is important to emphasize, however, that the litigation in *Betz* occurred *prior* to the city council's reenactment of the retirement act as §§ 17–181 through 17–197. *See Betz,* 605 A.2d at 838.

Both the retirement board and the individual plaintiffs contended that the Board of Investment Commissioners' powers were limited and devoid of the authority to administer pension funds. The increase of the Board of Investment Commissioners' powers under the amendment, according to the retirement board, needed the approval of the voters in the city because it was an attempt to amend the charter. With these contentions we disagree. Section 908 does not reveal a "clear * * * and unambiguous" grant of authority to the retirement board to invest pension and retirement funds. Rather, § 908(b)(1) grants to the retirement board the power "[t]o establish rules and regulations for and be responsible for the administration and operation of the city employee retirement systems under its jurisdiction," and § 908(b)(2) directs the retirement board to "report annually in detail to the city council" in January, showing fiscal transactions and transmitting a copy of the system's balance sheet. These two subsections comprise the entire enumerated powers and responsibilities of the retirement board. It is thus apparent that the retirement board has fewer powers under the Home Rule Charter than were enumerated under the lengthy and detailed retirement act. Most notably, § 4 of the retirement act, P.L.1923, ch. 489, the section that specifically granted to the retirement board the power to invest certain funds, was not incorporated into the Home

Rule Charter, nor was such authority granted to a different agency, board, or department. Hence, the Home Rule Charter did not grant to the retirement board decision-making authority over pension funds.

As noted *supra*, the retirement board's authority to invest pension funds was derived from the city council's grant of that power in ordinance 1991, chapter 91–5,[6] codified as §§ 17–181 through 17–197, of the Code of Ordinances, that essentially reenacted the retirement act, as amended.

It is the conclusion of this court that under § 401 of the Home Rule Charter, the legislative powers vested in the city council are adequate and sufficient to enable the council to endow the retirement board (under ordinance 1991, chapter 91–5) and then the Board of Investment Commissioners (under ordinance 1993, chapter 93–12) with the authority to invest pension funds. Specifically, § 401 states, in pertinent part, that the "powers and duties of the city council shall include, without limitation, the following: (a) [t]o enact such ordinances as the city council may consider necessary to insure the welfare and good order of the city." Given this authority, the city council could grant and transfer the authority to invest pension funds.

Because the Home Rule Charter is silent on the issue of pension-fund investments, we are of the opinion that the retirement board's power and duty to administer the retirement system under § 908 do not *require* that the retirement board invest pension funds, nor do we hold that such authority is inherent in a retirement board. *See, e.g.*, G.L. 1956 (1990 Reenactment) §§ 36–8–3 and 35–10–2 (statutes granting State Retirement Board general powers similar to that of the retirement board but vesting authority to invest funds in a different agency).

Although the retirement board has contended that the Board of Investment Commissioners is not authorized to invest pension funds, we note that § 815 of the Home Rule Charter directs that

"[t]he board [of investment commissioners] shall have the control and management of all sinking funds established for the redemption of any bonds or notes issued by the city, or for the redemption of any bonds held by the city. The board shall hold any fire insurance fund, waterworks depreciation and extension fund, or any additional funds which the city council may by ordinance from time to time prescribe. It shall further be the responsibility of the board to direct the investment of all unencumbered and unappropriated funds of the city government, including but not limited to all bequests, devises and trusts."

Accordingly, pursuant to ordinance 1993, chapter 93–12, and in the exercise of the authority under § 815 of the Home Rule Charter, the city council has validly "prescribed" that the Board of Investment Commissioners hold and invest the funds of the Employees' Retirement System. Absent a specific charter prohibition barring the transfer of investment authority from the retirement board to the Board of Investment Commissioners, we hold that ordinance 1993, chapter 93–12 is consistent with the charter.

Because this issue is dispositive of the cases before this court, we refrain from addressing the parties' other contentions.

For the foregoing reasons the defendants' appeal is sustained, and the judgment of the Superior Court is reversed. We remand the papers in these cases to the Superior Court with instructions to enter judgment denying all relief requested by the plaintiffs.

BOURCIER, J., did not participate.

---

6. Apparently the authority for the retirement board's activities was not questioned from the effective date of the Home Rule Charter in 1983 to the enactment of ordinance 1991, ch. 91–5.