**Rose BRINDAMOUR, Individually and as Administratrix of the Estate of Colleen Marie Brindamour**

v.

**The CITY OF WARWICK, by and through its Treasurer, John Martin.**

No. 96–201–Appeal.

Supreme Court of Rhode Island.

July 10, 1997.

Thomas A. Tarro, III, Warwick, for Plaintiff.

Mark T. Reynolds, for Defendant.

Before WEISBERGER, C.J., and FLANDERS and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The plaintiff, Rose Brindamour, individually and as administratrix of the estate of Colleen Marie Brindamour, appeals from a final judgment entered after the Superior Court granted the motion for summary judgment filed by the defendant, the city of Warwick (the city). On June 17, 1997, this matter came before a panel of this court after we ordered the parties to show cause why this appeal should not be summarily decided. After considering their respective submissions, we conclude that the appeal can be decided without further briefing and argument.

At approximately midnight on a midsummer evening in 1993, long after the city-owned park (City Park) had closed for the day, plaintiff's daughter, Colleen Marie Brindamour (Brindamour), was traveling within the park as a passenger in an automobile operated by Frank J. Patenaude when it skidded off City Park Road and slammed into a tree head-on, killing Brindamour. In her complaint plaintiff alleged that the city was negligent in failing to maintain City Park and its roadways in a safe manner. In due course the city filed a motion for summary judgment, arguing that the public-duty doctrine shielded it from liability because the city's complained-of activities—that is, its alleged failure to take adequate steps to regulate the speed of vehicles traveling on City Park Road and to illuminate it properly—were ones that private individuals do not ordinarily undertake. *See generally DeFusco v. Todesca Forte, Inc.*, 683 A.2d 363, 365 (R.I.1996) (" '[t]he public duty doctrine shields the state and its political subdivisions from tort liability arising out of discretionary governmental actions that by their nature are not ordinarily performed by private persons' "). The motion justice "reluctantly" agreed that the public-duty doctrine applied and granted the city's motion.

On appeal plaintiff contends that the trial justice erred in granting summary judgment because a genuine issue of material fact existed concerning the negligence of the city in maintaining City Park and City Park Road in a reasonably safe manner. Citing *O'Brien v. State*, 555 A.2d 334 (R.I.1989), plaintiff argues that the public-duty doctrine is inapplicable because as a park operator the city was acting as a landowner engaged in a proprietary function[1] and, therefore, had a duty to maintain the property in a reasonably safe condition. In *O'Brien*, the plaintiff, a patron of the Lincoln Woods State Park, tripped over a horseshoe stake or iron bar while walking there. *Id.* at 335. The plaintiff brought suit against the state, alleging that it

---

1. We note, however, that in *O'Brien v. State*, 555 A.2d 334, 338 (R.I.1989), we also stated that "the former distinction between proprietary and governmental functions no longer is either controlling or of significant assistance in determining the liability of a municipality or the state * * *."

was negligent in its maintenance of the park. *Id.* The Superior Court entered judgment in favor of the state, and the plaintiff appealed. *Id.* This court reversed and held "that the state as landowner or park operator is acting as a private person might act who was the owner of land and who charged a fee to those who might come upon that land." *Id.* at 338. Thus the court held that the special-duty doctrine [2] was inapplicable and that the state had a duty to maintain the park in a reasonably safe condition for persons like plaintiff who were invited to enter upon the property.

■ This case, however, is factually distinguishable from *O'Brien*. The decedent in this case was not an invited guest of City Park. On the contrary, the park was closed to decedent and to the other members of the public at the time of the accident. *O'Brien* stands for the proposition that the state and its municipalities, like other landowners, owe a duty to "maintain the[ir] property in a reasonably safe condition for the benefit of those persons who might come upon the land." *Id.* But that duty does not extend to trespassers. *See Tantimonico v. Allendale Mutual Insurance Co.*, 637 A.2d 1056, 1061 (R.I.1994).

■ Because the plaintiff's decedent was in City Park after hours, she was a trespasser. Accordingly, even assuming (without deciding) that the city should be held to the same standard of care as a private landowner in this situation, such a landowner only owes to trespassers the duty to refrain from wanton or willful injury. *Id.* at 1061. There is no liability for mere negligence. Therefore, as a matter of law, the city did not breach its duty to the plaintiff's decedent because no evidence was presented to the motion justice indicating that the city had acted in a wanton or willful manner concerning its maintenance of City Park Road. For this reason the motion justice properly granted summary judgment, albeit our rationale is different from the one he relied upon in granting the motion. *See Thibodeau v. Metropolitan Property and Liability Insurance Co.*, 682 A.2d 474, 475 (R.I.1996) (affirming trial justice on grounds other than those specifically relied upon by trial justice).

The plaintiff's appeal is denied and dismissed.

LEDERBERG and BOURCIER, JJ., did not participate.

2. The special-duty doctrine is an exception to the public-duty doctrine. *DeFusco v. Todesca Forte, Inc.*, 683 A.2d 363, 365 (R.I.1996). Before liability can attach under this exception, the state must owe a special duty to an identifiable plaintiff. *Id.* When the state acts as landowner or park operator, however, a plaintiff need not demonstrate a special duty owed but rather can proceed on such a claim based upon the state's duty to maintain its land or park in a reasonably safe condition for those members of the public who have been invited to "come upon the land." *O'Brien*, 555 A.2d at 338.